**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

RAFAEL ANTONIO FOURNIER,

    **Plaintiff,**

        **v.**                  **CIVIL NO.** 07-1667 (FAB)

PAYCO FOODS CORPORATION,

    **Defendant.**

**OPINION & ORDER**

BESOSA, District Judge

    On December 12, 2007, plaintiff Rafael Antonio Fournier ("Fournier") filed an amended complaint against defendant Payco Foods Corporation ("Payco") (Docket No. 30). In his amended complaint, Fournier alleged that Payco discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Fournier also attached supplemental Commonwealth claims pursuant to Law No. 44 and Law No. 80. On January 9, 2009 Payco filed a motion for summary judgment (Docket No. 53). Fournier opposed Payco's motion on February 3, 2009 (Docket No. 62). Payco replied to Fournier's opposition on February 19, 2009 (Docket No. 71).

    For the reasons provided below, the Court **GRANTS** Payco's motion for summary judgment.

## I.    Background[1]

### A.    Fournier's job at Payco

Fournier began to work for Payco, a Puerto Rican corporation in the business of distributing ice cream throughout the island, as a "Payco Centro driver" on July 27 or 28, 2004.[2] Payco's main office and warehouse is located in Hato Tejas, Bayamon.  It has four "terminals" located in Hatillo, Luquillo, Ponce and Aguada, as well as "Payco Centros" in numerous towns throughout the island.  Payco also provides products to independent distributors.

As of May 2007 Jose Carrero ("Carrero") held the position of Warehouse Manager for Payco.  He occupied this position from August 1, 2006  until October 31, 2008.  As the Warehouse Manager, Carrero was responsible for distributing merchandise throughout Puerto Rico.  To distribute the merchandise, Payco used four drivers who had assigned routes to deliver merchandise from Hato Tejas to the four terminals (in Hatillo, Luquillo, Ponce, and

---

[1] Payco correctly notes in its reply to Fournier's proposed statement of uncontested material facts (Docket No. 71-2) that Fournier often improperly supported his proposed facts.  Instead of noting and discussing each occurrence of improperly supported facts, many of which are irrelevant to the Court's analysis of the summary judgment motion, the Court chooses to simply summarize the proposed facts that are relevant and properly supported.

[2] The record contains conflicting assertions as to the exact date that Fournier began to work for Payco.  Whether Fournier began work on July 27 or 28, 2004, however, has no bearing on the outcome of the summary judgment motion.

Aguada).  The remaining drivers, known as "Payco Centro drivers,"
were assigned to drive merchandise to Payco Centros and independent
distributors throughout the island.  As of May, 2007, Payco Centros
were located in Caguas, Aibonito, Bayamon, 65th Infantry Avenue,
Mayagüez, Aguada and Isabela.  The independent distributors were
located in Cayey, Ponce, Arecibo, Villalba, Rio Grande, Naguabo,
Vega Baja, and Humacao.

The Payco Centro drivers, like Fournier,[3] had no
permanently assigned route.  The Warehouse Manager, Carrero, would
assign each Payco Centro driver a new route on a daily basis.
These routes were designed in response to the daily orders received
from the Payco Centros and the independent distributors.  In
addition to filling orders, another criteria considered by Carrero
when he designed the daily routes was whether or not a particular
driver had taken a long route the previous day.  If a Payco Centro
driver had a long route one day, Carrero attempted to ensure that
driver a shorter route the following day.  The Bayamon, 65th
Infantry Avenue and Vega Baja locations did not generate a
sufficient number of orders to keep a driver busy delivering only
to those locations.

As a Payco Centro driver, Fournier was responsible for picking
up a truck loaded at the Hato Tejas Warehouse and then driving that

_____

[3] From July 27, 2004 until his termination on May 17, 2007
Fournier held the position of Payco Centro driver.

truck to the destinations assigned to them the previous day.  The merchandise included cases that weighed up to thirty pounds. Fournier was responsible for unloading the merchandise from the truck at each destination and verifying that the amount of merchandise delivered matched the order.  There is a dispute as to whether Fournier was exclusively responsible for unloading his delivery truck.  Payco avers that it was Fournier's responsibility alone as a Payco Driver, while Fournier states that the "usage and custom" at his delivery stops was that salesmen at Payco Centros and independent distributors would assist him in unloading the truck.  Payco avers that it was not the salesmen's responsibility to aid drivers in unloading the delivery trucks.

**B.   Cancer, recovery, and termination from employment**

Beginning May 4, 2006 Fournier took sick leave.[4]  He initially called in sick because he had a fever and the flue, but after suffering from the same symptoms for a week he went to a hospital.  At the hospital, Fournier was diagnosed by Doctor Robert Hunter ("Dr. Hunter") with hairy cell leukemia and renal cell carcinoma.  Fournier received chemotherapy from August 21 to 26, 2008.  Following the treatment, no leukemia was detected in Fournier's blood samples but a bone marrow test was not performed to confirm that no vestige of leukemia lingered in Fournier's

---

[4] While out on sick leave, Fournier received benefits pursuant to a local law known as the Driver's Insurance Law ("Ley de Seguro Choferil").

system.   On March 12, 2007 Fournier had a partial nephrectomy during which a mass in one of his kidneys, the renal cell carcinoma, was successfully removed.

        During a visit to Dr. Hunter on April 12, 2007, Fournier told Dr. Hunter that he felt uncomfortable in the area around his scar and for this reason he could not remain seated for a long time.  Fournier also told Dr. Hunter that he drove long distances for his job, such as from Ponce to Mayagüez, and that he would be in pain and uncomfortable during such trips.   Fournier also mentioned that he had to unload merchandise from a truck. Following the meeting, Dr. Hunter issued a medical certificate to Fournier in which he wrote that Fournier "cannot drive any vehicle for a long distance and cannot use excessive force in a temporary manner due to his health condition."  Dr. Hunter stated in his deposition that he issued the medical certificate because Fournier had been in surgery only four weeks before his visit and that many patients require more time before returning to work.   The restriction on Fournier was temporary and intended to enable the surgery scar to heal safely.  The medical certificate issued by Dr. Hunter did not specify what would constitute a long distance trip nor what would constitute excessive force.  Dr. Hunter did not know the period of time that the excessive force restriction would be in place.  Fournier understood that the excessive force limitation prevented him from frequently lifting heavy boxes.

Dr. Hunter stated in his deposition that by June 6, 2007 Fournier was able to occasionally lift objects that weighed up to 50 pounds and that he was able frequently to lift objects that weighed up to 25 pounds.

Payco received Fournier's medical certificate on April 27, 2007. Yadira Diaz ("Diaz"), Payco's Human Resources Manager, reviewed the medical certificate and discussed with Carrero whether Fournier could perform the duties of a Payco Centro driver given the restrictions in the certificate. Based on their understanding of the restrictions included in the certificate, Diaz and Carrero believed that Fournier could not occupy the position of Payco Centro driver. They reached this conclusion because a Payco Centro driver has to drive to towns throughout the island, and because the cases that the driver unloads from the truck weigh up to 30 pounds. Diaz checked whether there were any positions vacant in the company and found that the only available position was that of Category Management Analyst, a position that Fournier was not qualified to hold.[5]

On May 8, 2007, Diaz and Carrero met with Fournier to discuss the medical certificate, Fournier's responsibilities as a Payco Centro driver, and Payco's position regarding the

---

[5] The job description for Category Management Analyst includes a Bachelor's Degree as a requirement. Fournier did not have a bachelor's degree although he did study for a time at Caribbean University College.

certificate.  During the meeting Diaz stated that Fournier could not perform the duties of a Payco Center Driver with the restrictions included in the medical certificate.  Fournier stated that he could make deliveries in the metropolitan area to stores such as Bayamon, 65th Infantry Avenue and Vega Baja.  Diaz responded that Payco did not have a daily route to only those locations.  Diaz also told Fournier that she could not give him a personal assistant to drive long distances and to unload merchandise from the truck.  During the meeting, Fournier told Diaz that he could perform the duties of a Payco Centro Driver without any restriction.  In response, Diaz asked Fournier to obtain a medical certificate stating that he could work without any restrictions.

At some point in time following the meeting, Fournier requested that Dr. Hunter provide him with a medical certificate authorizing him to work without any restrictions.  Dr. Hunter refused to give him such a certificate.[6]  At any rate, on May 11, 2007, Fournier telephoned Payco and stated that he had not obtained a second medical certificate and that Payco "could do whatever it wanted."  That same day, Fournier filed an EEOC complaint in which he said that he had been threatened, discriminated against, and rejected by Diaz because he was a cancer

---

[6] Dr. Hunter stated in his deposition that he did not remember that Fournier requested a second medical certificate from him so that he could return to work without restrictions.

survivor.  Fournier also wrote in the EEOC complaint that at the May 8, 2007 meeting Diaz told him that there was no reasonable accommodation available for him and that she required a new medical certificate authorizing him to work without any limitations or his employment would be terminated.

Once notified that Fournier had not obtained a second medical certificate removing the limitations on Fournier's ability to work, Diaz recommended to Payco's Chief Executive Officer Valerie Cornut ("Cornut") that Payco terminate Fournier from his employment because he was unable to fulfill the duties of a Payco Centro driver and because he did not qualify for the only other vacant position available at Payco at that time.[7]  Cornut approved Diaz's recommendation.  On May 17, 2007, Diaz sent Fournier a letter notifying him that he had been terminated from employment with Payco.  Fournier stated that he did not know who was involved in the decision-making process that resulted in his termination or who made the decision to terminate him.

### C. Depression

In August of 2005 Fournier was diagnosed as suffering from depression and anxiety.  At his deposition, Fournier was unable to remember if he suffered from anxiety or depression in

---

[7] Diaz was unaware of any other impairment or limitation confronting Fournier other than what was included in Dr. Hunter's medical certificate (i.e., limitations on long distance driving and on exerting excessive force related to an operation Fournier underwent to remove a cancerous growth).

April or May of 2007.   To support his opposition to summary
judgment Fournier included a statement under penalty of perjury in
which he claimed to have taken medication and received
psychotherapy from August 2005 to the present day.   Without
medication for depression and anxiety, Fournier stated that he
cannot sleep.   He asserts that in August 2005 he told his former
supervisor Martin Ramos that he suffered from depression and
anxiety.   Fournier does not show, however, that Diaz, Cornut, or
even Carrero were aware that he suffered at any point in time from
anxiety or depression.   To the contrary, the record reveals that
Dr. Hunter's medical certificate makes no mention of depression or
anxiety just as the record shows that Fournier's anxiety and
depression were not discussed in the May 8, 2007 meeting.

**II.   Summary Judgment Standard**

The Court's discretion to grant summary judgment is governed
by Rule 56 of the Federal Rules of Civil Procedure.   The rule
states, in pertinent part, that the court may grant summary
judgment only if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as
a matter of law."   FED.R.CIV.P. 56(c); see also Santiago-Ramos v.
Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).
The party moving for summary judgment bears the burden of showing

the absence of a genuine issue of material fact.  See Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the
opposing party has the burden of demonstrating that a trial-worthy
issue exists that would warrant the Court's denial of the motion
for summary judgment.  For issues where the opposing party bears
the ultimate burden of proof, that party cannot merely rely on the
absence of competent evidence, but must affirmatively point to
specific facts that demonstrate the existence of an authentic
dispute.  See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st
Cir. 2000).

In order for a factual controversy to prevent summary
judgment, the contested facts must be "material" and the dispute
must be "genuine."  Material means that a contested fact has the
potential to change the outcome of the suit under governing law.
The issue is genuine when a reasonable jury could return a verdict
for the nonmoving party based on the evidence.  See Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled
that "[t]he mere existence of a scintilla of evidence" is
insufficient to defeat a properly supported motion for summary
judgment.  Id. at 252.  It is therefore necessary that "a party
opposing summary judgment must present definite, competent evidence
to rebut the motion."  Maldonado-Denis v. Castillo-Rodriguez, 23
F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## III. Discussion

### A. Payco's decisionmakers were unaware of Fournier's depression and anxiety disorders

As an initial matter, the Court must explain why it shall proceed to analyze the physical limitations placed upon Fournier subsequent to his surgery to remove a cancerous growth and not the mental limitations upon him related to his anxiety and depression. The ADA prohibits covered employers from discriminating against a qualified individual on the basis of disability in regards to the terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). A necessary prerequisite to holding an employer liable under the ADA is that the employer actually had knowledge of the plaintiff's disability. See 42 U.S.C. § 12112(b)(5)(A) (defining discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability") (emphasis supplied); Dudley v. Hannaford Bros. Co., 333 F.3d 299, 308 (1st Cir. 2003) ("it would be mindless to hold the employer liable for failing to accommodate

the (unknown) disability"); <u>Morisky v. Broward County</u>, 80 F.3d 445,
448 (11th Cir. 1996); <u>Hedberg v. Indiana Bell Telephone Co.</u>, 47
F.3d 928, 932 (7th Cir. 1995); <u>Landefeld v. Marion General
Hospital</u>, 994 F.2d 1178, 1181-82 (6th Cir. 1993) (Rehabilitation
Act); <u>Clapp v. Northern Cumberland Memorial Hosp.</u>, 964 F.Supp. 503,
505 (D.Me. 1997).

Fournier has failed to provide any evidence that the
decisionmakers at Payco knew of his depression and anxiety. Payco,
on the other hand, provides evidence that Diaz, the decisionmaker,
was not aware that Fournier suffered from depression and anxiety.
Moreover, no reference was made to Fournier's depression or anxiety
in any of the other key documents or events that make up the
factual record. For example, no references to his depression and
anxiety were included in the medical certificate that he provided
to Payco explaining the conditions under which he could return to
work after a year of absence related to treatment for cancer; no
mention of Fournier's depression or anxiety was made in the
May 8, 2007 meeting in which he was told that he could not meet the
duties of a Payco Center driver because of the temporary
limitations resulting from his cancer treatment; and Fournier did
not even mention his depression and anxiety in the EEOC complaint
that he filed on May 11, 2007. In sum, there is no evidence in the
record that the decisionmakers at Payco or even any current
employee at Payco knew that Fournier suffered from depression and

anxiety.   Accordingly, the Court finds that Payco did not have

knowledge of Fournier's depression and anxiety disorders.  As such,

Payco could not have discriminated against Fournier based upon his

anxiety and depression disorders under the terms of the ADA.[8]

**B.   Disability Discrimination**

Leaving   aside   claims   of   depression   and   anxiety,

Fournier's   claim   for   discrimination   based   upon   his   physical

limitations resulting the surgery for cancer remains.  To establish

a *prima facie* case of disability discrimination pursuant to the

ADA,  a  plaintiff  must  prove  the  following  three  factors  by  a

preponderance  of  the  evidence:   (1)  that  he  was  disabled  within  the

meaning  of  the  ADA;  (2)  that  he  was  a  qualified  individual;  and

(3)  that  he  suffered  an  adverse  employment  action  because  of  his

disability.  See Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104

(1st Cir. 2005); Phelps v. Optima Health, Inc., 251 F.3d 21, 24

(1st Cir. 2001); Ward v. Mass. Health Research Inst., Inc., 209

F.3d 29, 33 (1st Cir. 2000); Laurin v. Providence Hosp., 150 F.3d

52, 56 (1st Cir. 1998).  Fournier asserts that he has stated a

---

[8] Fournier also fails to prove another essential element of
his burden in relation to his ADA claim based upon anxiety and
depression:  that he sufficiently requested an accommodation for
his anxiety and depression disorders.   The ADA's "reasonable
accommodation requirement usually does not apply unless triggered
by a request from the employee."  Reed, 244 F.3d at 261 (internal
quotation and citation omitted).  The request must be "sufficiently
direct and specific, giving notice that [the plaintiff] needs a
special  accommodation."   Id. (internal  quotation  and  citation
omitted).  As stated above, Fournier made no such request related
to his anxiety and depression.

*prima facie* case by showing that he was temporarily unable to drive long distances or lift heavy objects; that Payco could have adjusted the routes to provide him with a short route and assistance unloading the truck; and that, nonetheless, Payco terminated his employment based upon his physical inability to drive long distances and lift heavy objects.  Payco responds that Fournier was not disabled within the meaning of the Act; that no reasonable accommodation was available for his limitations; and that the adverse employment action he experienced (for there is no debate that he was terminated from his employment) was unrelated to prohibited discrimination.   The Court agrees with Payco that Fournier's *prima facie* case is deficient because Fournier has failed (1) to put forth sufficient evidence at this stage to prove that he was disabled within the meaning of the Act or (2) to show that a reasonable accommodation was available for his limitations.

### 1.   Disabled pursuant to the ADA[9]

For the purposes of the ADA, a disability is either (1) a physical or mental impairment which substantially limits one or more of an individual's major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment.   42 U.S.C. § 12102(2).   Fournier argues that he

---

[9] Neither party mentions the fact that in September of 2008 Congress enacted the ADA Amendments Act, which by its own terms went into effect on January 1, 2009.   Pub.L. No. 110-325 (2008) ("ADA AA").   The overarching purpose of the act is to reinstate the "broad scope of protection" available under the ADA.   Id. at § 2(b).   Among other things, the ADA AA rejects the United States Supreme Court's interpretation of the term disability in Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002) and Sutton v. United Air Lines, 527 U.S. 471, 492 (1999).   Id.   The Court need not concern itself with the ADA AA, however, because the amendments do not apply retroactively.

Where Congress passes an interpretive or restorative statute, such as the ADA AA, its "intent to reach conduct preceding the 'corrective' amendment must clearly appear."   Rivers v. Roadway Exp., Inc., 511 U.S. 298, 313 (1994).   The text of the ADA AA fails to make any mention of retroactivity.   For this reason the Court holds that Congress did not manifest a clear intent for the ADA AA to apply retroactively.   The Court also holds that the ADA AA acts to increase a party's liability for past conduct because it expands the category of those who might qualify as disabled under the ADA. In such a case, the "traditional presumption" applies to prevent retroactive effect absent clear congressional intent.   Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994).   The Court's holding that the ADA AA does not apply retroactively to events occurring before the Act went into effect is consistent with every other opinion that this Court has reviewed in its survey of the case law on this matter.   See, e.g., E.E.O.C. v. Agro Distribution, LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009); Geoghan v. Long Island Rail Road, No. 06-CV-1435, 2009 WL 982451, at *8-9 (E.D.N.Y. April 9, 2009); Neal v. Kraft Foods Global, Inc., No. 08-CV-92, 2009 WL 799644, at *9-10 (D.Or. March 23, 2009); Burkhart v. Intuit, Inc., No. CV-07-675, 2009 WL 528603, *11 n.4 (D.Ariz. March 2, 2009); Rudolph v. United States Enrichment Corporation, Inc., No. 5:08-CV-00046, 2009 WL 111737, * 4-6 (W.D.Ky. Jan. 15, 2009).

actually suffered from an actual physical impairment that substantially limited more than one of his major life functions.[10] The analysis of whether a plaintiff has a disability within the meaning of the statute depends upon three factors: (1) whether the plaintiff suffered a physical or mental impairment; (2) whether a life activity limited by the impairment qualifies as major; and (3) whether the impairment substantially limited a major life activity. Calero-Cerezo, 355 F. 3d at 20.  The burden is on the plaintiff to establish these three elements.  Id.  The determination of whether a plaintiff is disabled under the Act must be made on a case-by-case basis.  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002).

Fournier alleges, and Payco does not controvert, that he suffered from a physical impairment that prevented him from driving long distances and from exerting "excessive force." Fournier builds upon this premise by asserting that the physical impairment limited him in a major life activity: working.  The Court accepts, arguendo, that working is a major life activity. See 29 C.F.R. § 1630.2(i); Sutton v. United Air Lines, 527 U.S. 471, 492 (1999) (assuming without deciding that working is a major life activity but noting the "conceptual difficulties in defining

---

[10] In his opposition to summary judgment Fournier includes a single paragraph in which he claims in conclusory terms to have had a record of a disability.  This claim is patently insufficient and the Court shall discuss it no further.

major life activities to include work, for it seems to argue in a
circle"); Gelabert-Ladenheim v. American Airlines, Inc., 252 F.3d
54, 59-60 (1st Cir. 2001); Lebron-Torres v. Whitehall Laboratories,
251 F.3d 236, 239-40 (1st Cir. 2001); Lessard v. Osram Sylvania,
Inc., 175 F.3d 193, 197 (1st Cir. 1999).  Nonetheless, Fournier
fails to show that he was "substantially" limited in a major life
activity for at least two reasons.

        First, the limitations on Fournier were only
temporary.  The duration or expected duration of the impairment, as
well as the permanent or long-term impact of the impairment, are
factors to be weighed in determining if an individual is
substantially limited in a major life activity.  29 C.F.R. §
1630.2(j)2(ii)-(iii); see Toyota Motor Mfg., Ky., Inc. v. Williams,
534 U.S. 184, 198 (2002) (holding that the impairment's impact must
be long term); Pollard v. High's of Baltimore, Inc., 281 F.3d 462,
468 (4th Cir. 2002) ("a temporary impairment, such as recuperation
from surgery, will generally not qualify as a disability under the
ADA"); Gutridge v. Clure, 153 F.3d 898, 901-02 (8th Cir. 1998);
Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir.
1996); McDonald v. Pennsylvania, 62 F.3d 92, 95-96 (3d Cir. 1995);
Ragusa v. Malverne Union Free School Dist., 582 F.Supp.2d 326, 341
(E.D.N.Y. 2008) (collecting cases within the Second Circuit).
Fournier's limitations stemmed from irritation in the area of his
surgery scar.  Both Fournier and Dr. Hunter expressly stated that

the limitations on his work were only temporary.  Although they did
not advise Payco of the length of the limitations, the record
reveals that by June 6, 2007, Fournier was already able to
frequently lift 25-pound objects and occasionally lift 50-pound
objects.  Fournier has pointed to no other evidence in the record
indicating that the limitations were not short-term in nature.
Accordingly, the Court holds that Fournier was not disabled within
the meaning of the Act because of the temporary nature of the
limitations at issue in this case and the lack of other relevant
factors indicative of a substantial limitation.

Second, Fournier failed to address adequately, or
even acknowledge, the EEOC regulations[11] that specifically define
substantial limits on the major life activity of working.  The EEOC
explains that "[t]he term substantially limits means significantly
restricted in the ability to perform either a class of jobs or a
broad range of jobs in various classes as compared to the average
person having comparable training, skills and abilities.  The
inability to perform a single, particular job does not constitute

---

[11]  EEOC regulations interpreting the ADA, while not
controlling, constitute a "body of experience and informed judgment
to which courts . . . may properly resort for guidance."  Grenier
v. Cyanamid Plastics, Inc., 70 F.3d 667, 672 (1st Cir. 1995)
(citation omitted).

a substantial limitation in the major life activity of working."[12]
29 C.F.R. § 1630.2(j)(3)(i).  These guidelines call for a "multi-
level analysis, starting with the skills of the plaintiff
[himself], and moving to the nature of the jobs [he] was prevented
from performing as well as those [he] was not."  Gelabert-
Ladenheim, 252 F.3d at 59.  Fournier has made no showing as to how
his past and or present work experience situates him in the market
as compared to the average person with a similar background.  C.f.,
id. at 59.  He has also failed to make any showing concerning the
relevant job market.  Id.  Having made no showing as to these two
factors, Fournier is unable to show a significant restriction as to
either a class of jobs or a broad range of jobs in various classes.
In fact, Fournier suggests that he could have continued to work as
a delivery driver if he had short routes and did not have to lift

―――――――――――――――

[12] The regulations go on to explain that the following factors
may also be considered in determining whether an individual is
substantially limited in the major life activity of working:
   "(A) The geographical area to which the individual has
   reasonable access;
   (B) The job from which the individual has been disqualified
   because of an impairment, and the number and types of jobs
   utilizing similar training, knowledge, skills or abilities,
   within that geographical area, from which the individual is
   also disqualified because of the impairment (class of jobs);
   and/or
   (C) The job from which the individual has been disqualified
   because of an impairment, and the number and types of other
   jobs not utilizing similar training, knowledge, skills or
   abilities, within that geographical area from which the
   individual is also disqualified because of the impairment
   (broad range of jobs in various classes)."
29 C.F.R. § 1630.2(j)(3)(ii).

objects heavy enough to cause him to exert excessive force. Although no such job existed at Payco, such a job reasonably could have existed elsewhere in Puerto Rico.  If it did, this would destroy the argument that Fournier must make, that he was significantly restricted as to a single class of jobs:  that of delivery driver.  At any rate, Fournier does not carry his burden to show that he was restricted as to either a class of jobs or a broad range of jobs in various classes, and this constitutes a second basis for the Court's holding that Fournier was not disabled within the meaning of the ADA.

### 2.   Qualified Individual

A qualified individual under the ADA is one who is able to perform the "essential functions" of the position, in this case the essential functions of a Payco Centro driver, either with or without "reasonable accommodation."  See, e.g., Ward, 209 F.3d at 33.  The qualified individual analysis usually occurs in two steps:  (1) determining whether the plaintiff can perform the essential functions of his position; and (2) if he is unable to perform those essential functions, whether any reasonable accommodation would enable him to perform the essential functions. Phelps, 251 F.3d at 25 (citing Ward, 209 F.3d at 33).

An essential function is a "fundamental job duty of the employment position." Ward, 209 F.3d at 34 (citation omitted); Marginal functions of the position are not essential functions.

Essential functions "may be more encompassing than such core job requirements as an employee's technical skills and experience even including such individual or idiosyncratic characteristics as scheduling flexibility."  Id.  Payco posits that driving long distances, which amounts to trips from the Hato Tejas Warehouse to places such as Aibonito, Ponce, Yauco, Rio Grande, Mayagüez, Aguada, Isabela, Cayey, Arecibo, Caguas, Villalba, Naguabo, and Humacao, is an essential function for a Payco Centro Driver.  Payco also posits that unloading the Payco trucks including packages that weighed up to 30 pounds is an essential function of a Payco Centro Driver.  Fournier does not directly contest that driving long distances and unloading boxes that weigh up to 30 pounds are essential functions of the Payco Centro driver position.[13]  Instead, Fournier argues that Payco could have provided a short route as a reasonable accommodation.  He also implicitly argues that a reasonable accommodation was already in effect that would enable him to unload the 30-pound boxes.

---

[13]   In his statement submitted under penalty of perjury, Fournier stated that Payco had made accommodations for other drivers in the past when they were not able to drive long distances for a period of time.  Fournier failed to support this conclusory claim with any detailed statement concerning the type of accommodation made or the period over which such accommodations were in effect.  Payco, on the other hand, responded that any accommodations made for other drivers were done on a day-to-day basis, rather than as an on-going commitment provide other drivers with a short route.  This is consistent with the statements provided by Payco that orders from nearby sites (i.e., Bayamon, 65th Infantry Avenue, Vega Baja) could sometimes justify a "short route" but not on an every day basis.

The Court shall focus on whether a reasonable accommodation existed in relation to driving long distances (thereby skipping over the question of whether a reasonable accommodation existed to assist Fournier with unloading the 30 pound packages).[14]  A reasonable accommodation is an accommodation that enables a plaintiff to perform the essential functions of his position.  See Ward, 209 F.3d at 36 (citing 29 C.F.R. § 1630.2(o)(ii)).  Fournier argues that Payco could have provided him with a short route for delivery, essentially consisting of deliveries to Bayamon, 65th Infantry Avenue, Vega Baja, and perhaps Caguas.  Fournier has been unable to show, however, that Payco could create a short route as a reasonable accommodation.  Payco provided uncontradicted testimony that a Payco Centro Driver's duties included delivering products to the various Payco Centros and independent distributors throughout the island.  Carrero

---

[14] The record is somewhat muddled as to the question of whether a reasonable accommodation existed for a Payco Centro Driver's duty to unload the delivery truck.  Payco has provided statements stating that it is the sole duty of the driver to unload the truck at the Payco Centros and at the independent distributor locations. Fournier has stated that, in practice, Payco Centro salesmen and individuals from the independent distributors assist with unloading the trucks.  If individuals from the distribution points do in practice assist with unloading and could take the heaviest packages off the truck, then Fournier may not have needed any accommodation to comply with the essential function of unloading the truck.  It is also true, however, that "a court must evaluate the essential functions of the job without considering the effect of the special arrangements."  Phelps, 251 F.3d at 25. For the nonce, the Court shall avoid entering in this sticky issue here because it finds the lack of a reasonable accommodation for the essential function of long distance driving to be case-dispositive.

testified that orders from the Bayamon, 65th Infantry Avenue and Vega Baja locations did not support a daily route to these locations alone.  Fournier failed to provide any non-conclusory evidence to the contrary.  Fournier also failed to suggest any other accommodation that could have enabled him to meet the long-distance driving function of a Payco Centro driver.

It is the plaintiff's burden to show that an effective and reasonable accommodation exists.  Reed, 244 F.3d at 259.  To be reasonable, the accommodation must not be excessively difficult or expensive to implement.  Id.  The only accommodation requested (or suggested) by Fournier in this case amounts to the creation of a new position, that of short-route delivery driver. As Payco has explained, the orders received at the warehouse in Hato Tejas from the nearby delivery locations are not sufficient to support a route to only those locations.  Thus, the Court finds that Fournier's proposed accommodation was unreasonable.  The record is clear that without this accommodation Fournier was unable to perform an essential function of a Payco Centro driver.  The Court, therefore, finds that Fournier is not a qualified individual pursuant to the ADA.

**C.    Retaliation**

Fournier correctly states that he may assert a claim for retaliation, even where the underlying claim for disability discrimination (or disability) fails, as it does here.  See Soileau

v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997)
(citation omitted).  To state a claim for ADA related retaliation,
a plaintiff must establish that (i) he undertook protected conduct,
(ii) he suffered an adverse employment action, and (iii) that the
two were causally linked.  Carmona-Rivera v. Puerto Rico, 464 F.3d
14, 19 (1st Cir. 2006).  Payco does not contest that Fournier's
filing of the EEOC complaint constitutes protected action and that
Payco's termination of Fournier's employment is a form (if not the
distilled essence of) an adverse employment action.  Payco
contests, however, whether Fournier has shown a causal connection
between the two.

        A plaintiff may not carry a claim of discriminatory
retaliation simply by recounting that he complained and that he
faced an adverse action.  Kosereis v. Rhode Island, 331 F.3d 207,
217 (1st Cir. 2003).  The plaintiff must also attach evidence of
retaliatory behavior.  Carmona-Rivera, 464 F.3d at 20.  In fact,
"the adverse action must have been taken for the purpose of
retaliating.  And to defeat summary judgment, a plaintiff must
point to some evidence of retaliation by a pertinent
decisionmaker."  Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir.
1997).  In this case, Fournier does not even know who made the
decision to terminate his employment, so he understandably has not
produced evidence that Diaz, Cornut, or any one else acted against
him because of a retaliatory motive.

Rather than suggesting retaliation, the record indicates that Payco's decisionmakers had a legitimate motive.  In the May 8, 2007 meeting, Diaz told Fournier that he could not work as a Payco Centro driver because of the restrictions that were in place upon him.  Diaz also told Fournier that there was no accommodation available that would enable him to work as a Payco Centro driver.  In this meeting, Payco provided Fournier with the reason for his eventual termination.  The termination did not take place then because Fournier said in the meeting that he would attempt to receive medical permission to work without the restrictions present in his April 12, 2007, certificate.  Once Fournier notified Payco that he was unable to obtain a medical certificate without restrictions, Payco terminated his employment. This lapse in time between the May 8 meeting and Fournier's eventual termination is not sufficient for him to manufacture a retaliation claim.  The only purported evidence of retaliatory intent that Fournier presents is what transpired at the May 8, 2007 meeting itself.  This event, which served as the basis for Fournier filing his complaint, cannot serve double duty as evidence of retaliatory animus.  Fournier must point to something else in the record, and he has not.  There is no evidence of actions taken by Diaz and Cornut (the decisionmakers), or anyone else at Payco, subsequent to Fournier's filing of the EEOC complaint, that even

hints at a retaliatory animus.  For this reason, the Court dismisses Fournier's retaliation claim.

### D.  Supplemental Commonwealth Law Claims

Because no federal claims remain to ground jurisdiction in this case, Fournier's Commonwealth law claims against Payco are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV.  Conclusion

For the reasons provided above, the Court **GRANTS** Payco's motion for summary judgment:  the Court **DISMISSES** with **PREJUDICE** Fournier's claims of disability discrimination and retaliation raised pursuant to the ADA; the Court **DISMISSES** without **PREJUDICE** Fournier's Commonwealth law claims.  Judgment shall enter accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 1, 2009.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE